IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CAROL VAUGHN                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 1:24-CV-108-SA-RP

OKTIBBEHA COUNTY, MISSISSIPPI;
DELOIS FARMER; and JOHELEN WALKER                   DEFENDANTS

ORDER AND MEMORANDUM OPINION

On June 6, 2024, Carol Vaughn initiated this civil action by filing her Complaint [1] against
Oktibbeha County, Mississippi; Delois Farmer; and JoHelen Walker (collectively "Defendants").
Vaughn filed her First Amended Complaint [14], which is now the operative complaint, on August
9, 2024. The First Amended Complaint [14] brings causes of action for First Amendment
retaliation, race discrimination, and three state law claims. Before the Court are Oktibbeha County
and Farmer's respective Motions for Judgment on the Pleadings, or Alternatively, for Summary
Judgment [49, 52]. The Motions [49, 52] have been fully briefed and are ripe for review. Having
considered the parties' filings, as well as the applicable authorities, the Court is prepared to rule.

*Relevant Background*[1]

This civil action stems from Vaughn's alleged wrongful termination as deputy clerk for the
Oktibbeha County, Mississippi tax assessor's office. The named defendants are Oktibbeha County
("the County"); the County Administrator, Delois Farmer; and the Tax Assessor/Collector,
JoHelen Walker.

In 2023, Walker (a Black woman) ran as a candidate for Oktibbeha County's Tax
Assessor/Collector in the local election. Prior to the election taking place, Vaughn (a White

---

[1] As explained in more detail hereinafter, the following factual recitation is based on the factual allegations
contained in the First Amended Complaint [14] and the documents attached thereto.

woman) and Walker worked together in the same office under the then-incumbent Tax Assessor/Collector. However, during the election, Vaughn supported John Montgomery, Walker's opponent.

In supporting Montgomery, Vaughn attended political events "wearing Montgomery paraphernalia and, on her personal time, distributed signs for Montgomery's campaign." [14] at p. 3. Walker was allegedly present at events where Vaughn demonstrated her support for Montgomery. The First Amended Complaint [14] alleges that, while running for the elected position, Walker "made comments in the office which were intended to intimidate and pressure coworkers to vote for [her] rather than her political opponent, and averred that employees' jobs would be in jeopardy if they voted for [her] opponent." *Id.*

Additionally, the First Amended Complaint [14] alleges that when Walker began to campaign for office she initiated a "scheme" involving public funds for the "apparent political advantage of endearing herself to prominent citizens, Starkville police officers, and others…." *Id.* at p. 4. Specifically, Walker "directed that certain selected city taxpayers be taxed under the lesser county tax rate, rather than the [city] tax rate[,]" which was the rate they should have been assessed. *Id.* Walker accomplished this by "causing these persons to be falsely listed as living in the [c]ounty, knowing that they lived in the [c]ity." *Id.* The First Amended Complaint [14] alleges that Walker would often brag about the favors employees could receive from Starkville police officers in the form of ticket fixing for engaging in her same conduct.

Vaughn asserts that she reported this "theft of [c]ounty funds" as soon as she learned of its occurrence. *Id.* at p. 3-4. On November 17, 2023, Vaughn reported Walker to the Mississippi State Auditor's office. *See* [14], Ex. 2 at p. 1; [49], Ex. 4 at p. 2.[2] Beginning on November 30, 2023, she

---

[2] As noted, the County Administrator, Farmer, is also a defendant in this action. The First Amended Complaint [14] purports that Farmer was also reported to the State Auditor in addition to Walker. However,

provided further details of the scheme and supporting documentation to State Auditor Investigator Scott Floyd.

The same month, in November 2023, Walker was elected to the Tax Assessor/Collector position.

On January 3, 2024, Walker and Farmer, the County Administrator, told Vaughn "they knew that she was the person who turned [Walker] in to the State Auditor" because Investigator Floyd had disclosed that information to them. [14] at p. 4. On the same date, "Defendants demoted [Vaughn]" from bookkeeper to deputy clerk, resulting in a reduction in salary.[3] Thereafter, on January 9, 2024, after Vaughn declined to resign from her employment, "Walker informed [Vaughn]" that her employment was being terminated. At the time of her termination, Vaughn had been employed in her former position for six years. She contends she was replaced "by a far lesser-qualified black person[.]" *Id.* at p. 5.

Vaughn claims she was terminated for engaging in political speech in support of Walker's political opponent and for reporting Walker to the State Auditor's office for alleged commission of unlawful activity. She also alleges that she "believes its [sic] likely that her race (white) was a contributing factor" in her termination. *Id.* Vaughn brings two First Amendment retaliation claims pursuant to 42 U.S.C. § 1983—one is made against the County only and the other is asserted against all Defendants. She also brings claims against all Defendants for race discrimination under Title VII, 42 U.S.C. § 1981, and § 1983. Vaughn's state law claims include wrongful discharge in violation of public policy against the County, violation of Mississippi's Whistleblower Protection

---

Vaughn's EEOC charge, which is attached to her First Amended Complaint [14], indicates that she only reported Walker. *See* [14], Ex. 2 at p. 1. The actual State Auditor report, which was submitted by the County and generally referenced in the First Amended Complaint [14] as submitted by Vaughn, only reflects Walker's name as the person against whom the report was made. *See* [49], Ex. 4 at p. 2.

[3] The Court notes that in a different part of the First Amended Complaint [14] the date of the demotion is alleged as having occurred on January 2, 2024.

Act against all Defendants, and tortious interference with employment against Farmer and Walker, individually.[4]

On October 9, 2024, the County filed a Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment [49]. On the same date, Farmer filed a separate Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment [52]. Farmer and Walker then separately joined in the County's Motion [49] and supporting Memorandum [51]. *See* [54, 58].[5] The Motions [49, 52] seek dismissal of all of Vaughns claims. Vaughn opposes the same.

*Applicable Standard*

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "'The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim.'" *Murry v. City of Indianola, Mississippi*, 2025 WL 978217, at *6 (N.D. Miss. Mar. 31, 2025) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). "To survive a Rule 12(c) motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022) (quoting *Waller*, 922 F.3d at 599). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "The plausibility standard is not akin to a 'probability

---

[4] Farmer and Walker are only sued in their individual capacities. Vaughn makes no official capacity claims against them. *See* [14] at pp. 2, 5.

[5] More specifically, Farmer and Walker join in the County's Motion [49] and supporting Memorandum [51] "in so much as it applies to [them], including but not limited to, the arguments regarding (1) both First Amendment claims, (2) Mississippi Whistleblower Protection Act claim, and (3) Oktibbeha County's legitimate, nondiscriminatory reasons for Vaughn's termination." [54] at p. 1; [58] at p. 1.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, 129 S. Ct. 1937 (citations omitted).

"When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (quoting *Waller*, 922 F.3d at 599). This is the case because "'[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate' at the motion to dismiss stage." *Id.* (quoting *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023)). "A court must 'carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery.'" *Id.* (quoting *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019)). The Court acknowledges that "'an assertion of qualified immunity… does not subject the complaint to a heightened pleading standard.'" *Id.* (quoting *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)). However, "the district court must 'do more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Id.* (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

"Under Rule 12(c), courts 'accept all facts as pleaded and construe them in the light most favorable to [the plaintiff].'" *Hickman v. City of Newton, Mississippi*, 2025 WL 1699359, at *4 (S.D. Miss. June 17, 2025) (quoting *Guerra*, 82 F.4th at 282). As with Rule 12(b)(6) motions, the inquiry is limited to "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Id.*

*Analysis and Discussion*

The Defendants seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, alternatively, summary judgment under Federal Rule of Civil Procedure 56. *See* [49, 52]. Before turning to the merits of the claims, the Court will address two preliminary arguments Vaughn raises in her Response Memorandums [79, 81] related to the timeliness of the Motions [49, 52] and their conversion to summary judgment motions.

I.      *Timeliness of Motions*

First, Vaughn argues that the Motions [49, 52] are not properly before the Court under Rule 12(c). Again, Rule 12(c) provides that "[a]fter the pleadings are closed—*but early enough not to delay trial*—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c) (emphasis added). Vaughn contends that the filing of the Motions [49, 52] delays the trial in this case. She seemingly requests that the Motions [49, 52] be stricken for that reason. As to the delay, Vaughn points to the stay of discovery in this case, which was triggered when Farmer's Motion [52] was filed as it raises a qualified immunity defense. The Court need not rehash its justification for imposing a stay on discovery but reiterates that it entered the stay on its own accord and in accordance with the Local Rules. *See* [102].

Vaughn raises no other argument as to how the Motions [49, 52] delayed the trial in this case. The Court notes that the pleadings were closed on August 23, 2024. The instant Motions [49, 52] were filed approximately a month and a half later on October 9, 2024, "early enough not to delay trial." FED. R. CIV. P. 12(c). The Court finds it unnecessary to delve further into this issue. Vaughn's conclusory assertion on this point is without merit.

## II.    *Rule 56 Conversion*

Second, Vaughn argues against the conversion of the Motions [49, 52] to motions for summary judgment. "Federal Rule of Civil Procedure 12(d) gives the courts discretion, when presented with material beyond the scope of a 12(b)(6) [or 12(c)] motion, to convert the motion into one for summary judgment." *Barbe v. Strategic Claim Consultants LLC*, 2022 WL 1099803, at *2 (W.D. La. Apr. 12, 2022) (citing *Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988)). "Courts accept extra-pleading materials and convert Rule 12 motions to Rule 56 motions when those materials are 'likely to facilitate the disposition of the action' and 'will enable a rational determination of a summary judgment motion.'" *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, 2019 WL 1301967, at *2 (N.D. Miss. Mar. 21, 2019) (quoting *Isquith*, 847 F.2d at 194 n.3). "If the material is scanty, incomplete, or inconclusive, the court will likely refuse to convert the motion." *Lampley v. Brown*, 2019 WL 4050523, at *1 (M.D. La. Aug. 9, 2019) (citing *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 415 (5th Cir. 1980)). Additionally, "[t]he Fifth Circuit also counsels against conversion to a motion for summary judgment without affording the adversary 'an opportunity to conduct discovery.'" *Taylor v. Hartley*, 488 F. Supp. 3d 517, 528 (S.D. Tex. 2020) (quoting *Benchmark Electronics Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003)).

Vaughn again points to the stay of discovery imposed by the Court *sua sponte*, which she argues prevented her from taking several noticed depositions and from obtaining competent evidence necessary to establish her case. She attaches to her Responses [78, 80] a sworn Affidavit executed by her attorney, Jim Waide, wherein Mr. Waide states that "[Vaughn] cannot adequately respond to the pending Motions for Summary Judgment, as certain facts are not available to [Vaughn] in light of the stay." [78], Ex. 1 at p. 1; [80], Ex. 1 at p. 1. For their part, the Defendants

argue that there is no requirement that discovery take place before a grant of a summary judgment motion, and that Vaughn has made no request "for a continuance" under Rule 56(d). *See* [87] at p. 3.

Ultimately, the Court declines to convert the Motions [49, 52] to motions for summary judgment because the extrinsic materials submitted by the County are inconclusive and do not facilitate in the disposition of this case. The Court's specific reasoning for that determination will be explained hereinafter in the appropriate subsections.[6]

Having addressed these preliminary matters, the Court will turn to Vaughn's claims beginning with her federal claims and then turning to her state law claims.

## III.    *Federal Claims*

As indicated above, Vaughn asserts two separate First Amendment retaliation claims. She also asserts race discrimination claims under the Equal Protection Clause, Title VII, and Section 1981.[7] The Court will address these claims successively.

### A.   *Section 1983 Claims – Generally*

"Regarding Section 1983, the United States Supreme Court has held that the statute's 'very purpose. . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action *under color of state law.*'" *Alexander v. McAdams*, 2017 WL 5642328, at *3 (N.D. Miss. Apr. 18, 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972)) (emphasis in

---

[6] The Court acknowledges that this case has been stayed since October 16, 2024—approximately two months after Vaughn filed her First Amended Complaint [14]. *See* [61]. Prior to the stay, the parties exchanged initial disclosures, and thereafter Vaughn propounded two sets of written discovery. Since the Court has declined to convert the Motions [49, 52] on other grounds, the issue of whether Vaughn had an adequate opportunity to conduct discovery is moot.

[7] To be clear, the First Amendment retaliation claims and the Equal Protection claim are asserted pursuant to Section 1983.

original). "Therefore, to succeed on a Section 1983 claim, the plaintiff must demonstrate: '(1) a violation of the United States Constitution or of federal law; and (2) that the violation was committed by someone acting under color of state law.'" *Id.* (quoting *Hutton v. Shamrock Ridge Homeowners Ass'n*, 2009 WL 4796626, at *2 (N.D. Tex. Dec. 14, 2009) (in turn citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 117, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)).

Different standards apply to a Section 1983 claim against a municipality and an individual capacity claim against a government official. *See Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (to establish municipal liability under Section 1983, "[a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom."); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("In a personal-capacity suit, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. In such a suit, the official may assert personal immunity defenses such as qualified immunity.") Regardless of whether a plaintiff seeks to impose liability against a municipality or against an individual official, the plaintiff must establish a constitutional violation. *See Valle*, 613 F.3d at 541-42; *Goodman*, 571 F.3d at 395 (explaining that the first step in evaluating qualified immunity is to "determine whether plaintiff alleged a violation of a clearly established constitutional right. . ."). In other words, if the First Amended Complaint [14] does not allege a plausible constitutional violation, Vaughn's Section 1983 claims will be subject to dismissal. Accordingly, the Court will begin its analysis with whether Vaughn has sufficiently pled the existence of a constitutional violation.

1.    *First Amendment Retaliation Claims*

"The Supreme Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *McAdams v. Ladner*, 608 F. Supp. 3d 416, 423 (S.D. Miss. 2022) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)) (internal quotation marks omitted). "The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on a matter of public concern." *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 597 (S.D. Tex. 2012) (citing *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir.2008)). "Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (internal quotation marks and citations omitted). As noted, Vaughn brings two First Amendment retaliation claims— the first related to her report to the State Auditor and the second related to her political activity in support of Montgomery. The Court will analyze the claims separately as the claims involve different forms of speech.

a.    *Report to State Auditor*[8]

Vaughn claims that she was terminated for reporting Walker's allegedly illegal activity to the State Auditor. In order to state a claim for First Amendment retaliation, Vaughn "must plead

---

[8] The Court notes that Vaughn's First Amendment retaliation claim related to her report to the State Auditor's office is listed as "Count I" in the First Amended Complaint [14] and appears to be made only against the County and no other defendant. *See* [14] at p. 5 ("Defendant Oktibbeha County, Mississippi is liable for *this* violation of Plaintiff's First Amendment right to free speech.") (emphasis added). The First Amended Complaint [14] lists a total of six counts and each count specifies which defendant the referenced claim is being brought against. *See* [14] at p. 5 (compare Counts II, IV and VI made against "[a]ll Defendants" or broadly against "Defendants" to Counts I and III, which respectively state that "Defendant Oktibbeha County, Mississippi is liable…" and "Defendant Oktibbeha County, Mississippi violated state law…"). Count I does *not* reference Walker and Farmer's potential liability for that claim unlike Count V which charges the "Individual Defendants." *Id.* As such, the Court declines to recognize this claim as raised against any defendant other than the County.

10

that: '(1) [she] suffered an adverse employment action; (2) [she] spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.'" *Johnson v. Miller*, 126 F.4th 1020, 1029 (5th Cir. 2025) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)).

At this stage, the County only contests the second element. *See* [87] at p. 14 n. 68. "With regard to the second element of the requisite analysis, the Court must engage in a two-step evaluation, first determining whether the plaintiff was speaking as a citizen rather than as an employee and next whether the speech was on a topic of public concern." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 634 (W.D. La. 2013) (citing *Davis v. McKinney*, 518 F.3d 304, 311–12 (5th Cir. 2008)); *Harrison v. Lilly*, 854 F. App'x 554, 556 (5th Cir. 2021). The Court will address each prong in turn.

### i. Whether Vaughn spoke as a citizen

The County first argues that Vaughn spoke as an employee pursuant to her official duties when she made the report to the State Auditor and, therefore, her report does not constitute protected speech under the First Amendment. "When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Harrison*, 854 F. App'x at 556 (quoting *Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951) (internal quotation marks omitted). "'Official duties' are tasks that employees are required to perform as part of their job responsibilities." *Id.* (citing *Garcetti*, 547 U.S. at 421-22, 126 S. Ct. 1951).

On this point, Vaughn disputes that her job responsibilities as a *bookkeeper* required her to report alleged illegal activity to the State Auditor. *See* [81] at p. 13 (arguing that "[r]eporting a crime to the State Auditor is not a matter within the scope of a bookkeeper's duties.").

Before addressing the parties' specific arguments, the Court is compelled to point out that the County's arguments surround Vaughn's alleged duties as a *deputy clerk* and not as a bookkeeper. Notably, the First Amended Complaint [14] alleges that, at the time Vaughn made the report to the State Auditor in November 2023, she held the position of bookkeeper, and it was not until January 2024 that Vaughn was demoted "from the position of Bookkeeper to Deputy Clerk… ." [14] at p. 4-5. Though neither party points to any distinction between the two job titles, it appears from the facts alleged in the First Amended Complaint [14] that there *could* be a difference between them—particularly in that one position is specifically alleged as a demotion in comparison to the other. Nonetheless, the parties appear to use the two job titles interchangeably in the fact sections of their respective filings. *See* [51] at p. 3; [81] at p. 3. And while Vaughn denies that her report to the State Auditor was within the scope of her *bookkeeper* duties, she does not, in responding to the County's arguments, argue that the bookkeeper position is distinct from that of deputy clerk nor that the positions' respective duties vastly differ without overlap. As such, the Court need not further address this nonissue and will consider the parties' arguments without distinguishing between the two positions.

Returning to the question at hand, the Fifth Circuit has described the task of determining whether an employee spoke pursuant to her official duties as a "practical" inquiry and a "fact-intensive analysis." *See Foerster v. Bleess*, 2022 WL 38996, at *2 (5th Cir. Jan. 4, 2022); *see also Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014). In analyzing this issue, the Fifth Circuit considers the following non-dispositive factors: (1) "the relationship between the speech and the

employee's job," (2) "whether the speech was made up the chain of command," and (3) "whether the speech resulted from special knowledge acquired as an employee." *Id.* (citing *Gibson*, 773 F.3d at 667-68, 670).[9] Ultimately, the critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014).

The County argues that all of the above factors weigh in favor of finding that Vaughn was speaking as a public employee rather than a citizen when she reported alleged illegal activity to the State Auditor. In doing so, the County relies on several documents attached to its Motion [49], including Vaughn's actual report to the State Auditor.

As to the first factor, the County makes much of the fact that Vaughn explains in the report that she realized the alleged tax scheme was occurring while she was reviewing other clerks' tax district entries to ensure their accuracy. The County argues that Vaughn concedes, through her report, that part of her official duties was to make sure the correct tax district was "being attached" to taxpayers. [51] at p. 28. The Court need not determine whether the report sufficiently establishes Vaughn's official duties to reject this argument as it clearly misses the mark. Even assuming for the sake of argument that ensuring the accuracy of tax districts was part of Vaughn's job, according to the First Amended Complaint [14], the subject of Vaughn's report to the State Auditor was not the inaccuracy of certain tax district entries—it was Walker's alleged tax rigging scheme. *See* [14] at p. 4. The County does not argue that the report *itself* was made as part of Vaughn's process of ensuring the accuracy of tax district entries. It also does not argue that Vaughn's job duties required

---

[9] Though the above factors appear more broadly stated, the Fifth Circuit has in the past considered more specific "factors such as job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally." *Johnson v. Halstead*, 916 F.3d 410, 422 (5th Cir. 2019) (internal quotation marks and citations omitted).

her to report the alleged tax rigging scheme to the State Auditor. Beyond mere conjecture, the County does not link the speech at issue with "the *scope*" of any alleged official duty. *Lane*, 573 U.S. at 240, 134 S. Ct. 2369 (emphasis added).

The County's next argument regarding the first factor fails for the same reason. The County points to Mississippi statutory law providing that tax collectors are required to make monthly written reports to "the Auditor of Public Accounts… of all taxes collected by him during the preceding month for the state…[,]" but fails to explain the relevance of those monthly reports to the speech at issue here. MISS. CODE ANN. § 27-29-11. Not only has the County not established that the statutorily required reports involve or include reports to the State Auditor for illegal activity, but even if it had, it has not shown that the task of submitting the monthly reports was delegated specifically to Vaughn.

In short, the Court finds conclusory and unsupported the County's overarching argument that the "report to the state auditor is part of [Vaughn's] official duties as a deputy in the Oktibbeha County tax office." [51] at p. 29. The County has presented no argument, much less conclusive proof, connecting Vaughn's report to any of her alleged duties as a bookkeeper/deputy clerk. Absent this, the County has not demonstrated a "relationship" between the report and Vaughn's job. *Foerster*, 2022 WL 38996 at *2. According to the First Amended Complaint [14], Vaughn's job duties did not include reporting illegal activity to the State Auditor. *See* [14] at p. 5. Accepting this allegation as true, the first factor of this inquiry weighs in favor of Vaughn speaking as a citizen when she made her report to the State Auditor.

The second factor looks to "whether the speech was made up the chain of command[.]" *Foerster*, 2022 WL 38996 at *2. Regarding this factor, the parties do not dispute that the State Auditor's office, to which Vaughn made the report, "is an external entity" and therefore outside of

14

the relevant chain of command. [51] at p. 30. Despite this, the County argues that Vaughn reported Walker's alleged misconduct internally to the office manager of the Oktibbeha County tax office before her report to the State Auditor, and thus was speaking as an employee.[10] Crucially, the County provides no argument nor proof as to how the chain of command is structured within the Oktibbeha County tax office and on what level of the hierarchy, if at all, the office manager sits.

In support of this proposition, the County again references Vaughn's report to the state auditor. The County highlights a narrative contained in the report of the office manager explaining to Walker that Vaughn was reviewing all clerks' tax district entries in response to Walker's comment that she was being picked on. It argues that "Vaughn clearly communicated this issue internally prior to reporting the problem externally to the state auditor's office." *Id.* at p. 29-30. Assuming *arguendo* that the office manager is within the chain of command, the Court disagrees that the report conclusively demonstrates that Vaughn reported Walker's alleged misconduct to the office manager. While Vaughn's statement in the report appears to indicate that the office manager was aware that Vaughn was reviewing tax district entries, the Court declines to speculate that Vaughn must have reported Walker's alleged tax rigging scheme (the subject her report to the

---

[10] The County acknowledges that the Fifth Circuit has in the past held "that when speech is made 'to persons outside the workplace in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.'" *Foerster*, 2022 WL 38996 at *2 (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)). Based on this precedent, whether Vaughn internally reported Walker appears irrelevant at first glance. However, the County reiterates its argument that Vaughn's report to the State Auditor was made as part of her official job duties and is therefore unprotected when addressing the second factor. In *Foerster*, the Fifth Circuit further explained "that employee speech, made within or outside the chain of command and which would otherwise be unprotected from being the basis for discipline, is not transformed into protected speech simply by continuing to express those same concerns to certain external parties." *Id.* (citing *Corn v. Mississippi. Dep't of Pub. Safety*, 954 F.3d 268, 278 (5th Cir. 2020); *Anderson v. Valdez*, 913 F.3d 472, 478 (5th Cir. 2019)). It is unclear whether the County is contending that Vaughn's speech is unprotected irrespective of her report being directed externally because she acted pursuant to her duties and first made the report up the chain of command. To the extent it is making such argument, the Court has already rejected the notion that Vaughn's report to the State Auditor was made pursuant to her job duties in relation to the first factor. Nonetheless, the Court will address the County's remaining arguments out of an abundance of caution.

State Auditor) to the office manager before reporting the same to the State Auditor. The County provides no further argument surrounding any internal report by Vaughn. The First Amended Complaint [14] alleges, and the parties do not dispute, that Vaughn's speech in the form of her report to the State Auditor, was directed externally. Factor two weighs in favor of Vaughn speaking as a citizen in making her report. *See Foerster*, 2022 WL 38996 at *2.[11]

Finally, the Court turns to "whether the speech resulted from special knowledge acquired as an employee." *Foerster*, 2022 WL 38996 at *2. The County argues that Vaughn would not have been aware of the incorrect tax district entries without her special knowledge of the tax codes and system employed in the Oktibbeha County tax office. In response, Vaughn quotes *Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008), without elaborating as to the applicability of that case to this inquiry. Nonetheless, even accepting the County's argument, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane*, 573 U.S. at 240, 134 S. Ct. 2369.

Applying a practical inquiry, the Court finds that the First Amended Complaint [14] alleges sufficient facts to support that Vaughn was speaking as a citizen when she made her report to the State Auditor. *See Foerster*, 2022 WL 38996 at *2 ("None of [the] factors are dispositive."). As explained above, the extrinsic material relied upon by the County does not support a finding otherwise; thus, the County fails to carry its burden as to this subset of Vaughn's claim.

---

[11] The County raises one additional argument that is easily rejected. It argues that Vaughn's report is unprotected speech because the State Auditor's office was the most appropriate entity to report Walker's alleged misconduct. The Fifth Circuit has suggested that a report to an external agency "may still be unprotected if that agency is 'the most appropriate entity to which to report the misconduct.'" *Id.* at *3 (quoting *Gibson*, 773 F.3d at 670). That is, however, applicable in circumstances where the employee is reporting misconduct by a supervisor. *See Gibson*, 773 F.3d at 670. It is undisputed that Walker was not Vaughn's supervisor at the time the report to the State Auditor was made. As such, the Court rejects this argument.

ii.   *Public Concern*

The second prong of this element concerns whether Vaughn's speech involved a matter of public concern. "The determination of whether a public employee's speech addresses a matter of public concern is not a factual issue; it is a question of law to be decided by the court." *Marceaux*, 921 F. Supp. 2d at 634 (citing *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991)). "Although the distinction between matters of public concern and matters of private concern is not always clear, matters of public concern are generally considered to be 'any matter of political, social, or other concern to the community.'" *Id.* (quoting *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 461 (5th Cir. 1990)). "To determine whether a statement addresses a matter of public concern, the content, form, and context of a given statement, as revealed by the whole record must be considered." *Id.* (citing *Thompson*, 901 F.2d at 461).

"The Fifth Circuit 'has held that speech reporting official misconduct, wrongdoing, or malfeasance on the part of public officials involves matters of public concern.'" *Brown*, 871 F. Supp. 2d at 597 (quoting *Denton v. Morgan,* 136 F.3d 1038, 1043 (5th Cir. 1998)). The parties do not dispute that the content of Vaughn's report to the State Auditor involved a matter of public concern as it was a report of official misconduct. They likewise do not dispute that this particular form of speech weighs in favor of finding that Vaughn spoke on a matter of public concern. The County's arguments appear to be centered on the context surrounding Vaughn's report.

Specifically, the County argues that the report was "motivated exclusively" or "primarily" by Vaughn's personal concerns in her future employment because her preferred candidate lost and therefore the speech is unprotected. [51] at pp. 35, 37. In support of its position, the County relies in part on the analysis of the District Court for the Southern District of Texas in *Ostrewich v. City of Palacios, Texas*, 2024 WL 1258672, at *3 (S.D. Tex. Mar. 25, 2024), wherein the court, relying

17

on *Dodds v. Childers*, 933 F.2d 271 (5th Cir. 1991), noted that it "'may therefore be required to assess the primary motivation of the speaker in evaluating whether her speech addresses a matter of public concern.'" *Id.* Crucially, *Dodds* was a case involving "mixed speech." *See Dodds*, 933 F.2d at 273-274. To be clear, "mixed speech" is an employee's speech which contains "elements of both personal and public concern." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 186 (5th Cir. 2005). In *Dodds*, a community college employee alleged that one of her colleagues received special treatment because of a familial relationship with the president of the college's board of trustees. 933 F.2d at 272. There, the Fifth Circuit recognized that the employee's speech implicated both private and public interests and considered the employee's motivation in analyzing the *content* of her speech. *Id.*

In addition to *Dodds*, the Fifth Circuit has considered the speaker's motivation (i.e. personal interest) in evaluating the content of the speech at issue in other cases. *See Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 571 (5th Cir. 2004) (addressing issues of personal interest within the "content" portion of its analysis in a case involving mixed speech); *see also Dorsett v. Bd. of Trs. for State Colleges & Universities*, 940 F.2d 121, 124-25 (5th Cir. 1991) (evaluating plaintiff's "primary motivation" through examining the content of his speech, in addition to other evidence, and then analyzing the speech's form and context separately).

Here, the County does not identify any portion of Vaughn's report to the State Auditor that could be construed as touching on a matter of private concern so as to render this case a "mixed speech" case where the court "may… be required to assess the primary motivation of the speaker[.]" *Dodds*, 933 F.2d at 273. [12] Additionally, it does not dispute that the *content* of Vaughn's speech involves a matter of public concern. Thus, unlike *Dodds*, *Markos*, and *Dorsett*, Vaughn's

---

[12] Additionally, the County relies heavily on this Court's decision in *Dunn v. Tunica Cnty.*, 2021 WL 40266 (N.D. Miss. Jan. 5, 2021). *Dunn* was also a "mixed speech" case. *See id.* at *6.

alleged motivations in making the report are irrelevant at this juncture. The County's argument that Vaughn made the report based on personal ulterior motives has no bearing because there is simply no dispute as to the public nature of the *content* of Vaughn's speech.

Aside from focusing on Vaughn's alleged motivation, the County raises no further argument regarding the context of Vaughn's speech. *See Markos*, 364 F.3d at 572 (rejecting the proposition that "motivation is the new litmus test for the matter of public concern analysis, displacing the [content, context, and form] factors"). The Court will nonetheless still consider the context of Vaughn's speech.

"'The context inquiry analyzes the underlying philosophical, political, and social circumstances surrounding an employee's speech.'" *Muslow v. Bd. of Supervisors of Louisiana State Univ.*, 2020 WL 4471647, at *22 (E.D. La. Aug. 4, 2020) (quoting *Davis v. Allen Par. Serv. Dist.*, 210 F. App'x 404, 410 (5th Cir. 2006)). "Speech is made in the context of a matter of public concern when it occurs 'against a backdrop of widespread debate in the community' rather than when it is 'made solely in furtherance of a personal employer-employee dispute.'" *Id.* (quoting *Gibson v. Kilpatrick*, 838 F.3d 476, 486-87 (5th Cir. 2016)). The First Amended Complaint [14] alleges that Walker was elected during the same month that Vaughn made her report to the State Auditor, but it does not allege that Walker's involvement in the alleged tax rigging scheme was the subject of widespread debate within the community at that time. On the other hand, there are also no facts in the First Amended Complaint [14] that indicate that an employer-employee dispute existed at the time Vaughn submitted the report in November 2023. It was not until Walker took office in January 2024 that a dispute arose in relation to Vaughn's employment. *See* [14] at p. 3. The Court finds that, at this stage of the proceedings, this factor is neutral given the limited facts available.

"In considering the content, form, and context of a statement to determine whether it involves matters of public concern, 'no factor is dispositive.'" *Muslow*, 2020 WL 4471647 at *21 (quoting *Snyder v. Phelps*, 562 U.S. 443, 454, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)). The content and form factors weigh in favor of finding that Vaughn's speech involved a matter of public concern and the context factor is neutral. Considering all factors, the Court finds that "in this case the balance tips in favor of a finding of public concern." *Markos*, 364 F.3d at 574.

Ultimately, the Court finds that Vaughn has sufficiently pled a First Amendment retaliation claim against the County related to her report to the State Auditor.

### b. Political Patronage

Vaughn also brings a First Amendment retaliation claim against all Defendants alleging that she was terminated for supporting Montgomery—Walker's political opponent. "A First Amendment political retaliation claim requires proof that a plaintiff (a) suffered an adverse employment action (b) because of (c) his 'speech or activity related to a matter of public concern.'" *Maldonado v. Rodriguez*, 932 F.3d 388, 391 (5th Cir. 2019) (quoting *Aucoin v. Haney*, 306 F.3d 268, 274 (5th Cir. 2002)). In this case, the parties do not dispute that the First Amended Complaint [14] alleges that Vaughn was terminated because she engaged in political activity in support of Walker's opponent. The Fifth Circuit has held that "campaigning for a political candidate relates to a matter of public concern." *Maldonado*, 932 F.3d at 391 (internal quotations and citations omitted).[13] As such, the Court finds that Vaughn has sufficiently pled a prima facie claim of First

---

[13] Vaughn brings this claim against all Defendants, but there exists a caveat with respect to Farmer's individual liability. "In a First Amendment retaliation claim against an individual defendant, the plaintiff must plead that the individual defendant's 'animus against [her] exercise of First Amendment rights is a link in the causal chain that led to [her] firing.'" *Sullivan v. City of Dallas, Texas*, 2022 WL 3648625, at *7 (N.D. Tex. July 29, 2022) (quoting *Jones v. Hoseman*, 812 F. App'x 235, 239 (5th Cir. 2020) (in turn quoting *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018)). As Farmer points out, the First Amended Complaint [14] is void of any allegation that Farmer harbored any animus against Vaughn for supporting Walker's political opponent or that she was even aware of Vaughn's activity. As such, this claim

20

Amendment political retaliation against the County and Walker. *See Garza v. Escobar*, 972 F.3d 721, 728 (5th Cir. 2020) (recognizing the elements of a prima facie First Amendment political retaliation claim as set forth in *Maldonado*). The parties dispute, however, whether Vaughn was subject to political patronage dismissal—an "exception to the First Amendment's protection." *Id.* at 729.

Often referred to as the *Elrod-Branti* exception, "[t]he First Amendment generally prohibits adverse employment actions against government employees based on political affiliation, but, where an employee's private political beliefs would interfere with the discharge of her public duties, her First Amendment rights may be required to yield to the [government's] vital interest in maintaining governmental effectiveness and efficiency[.]" *Haddock v. Tarrant Cnty., Texas*, 852 F. App'x 826, 829 (5th Cir. 2021) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 517, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980)). The Defendants bear the burden of "'establish[ing] that the government's interest in promoting the efficiency of the services provided by its employees outweighs [Vaughn's] interest in engaging in the protected activity.'" *Garza*, 972 F.3d at 729 (quoting *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995)).

"'This analysis in reality is a sliding scale or spectrum upon which 'public concern' is weighed against disruption.'" *Id.* (quoting *Vojvodich*, 48 F.3d at 885); *see also Maldonado*, 932 F.3d at 392 ("this circuit, interpreting the [Supreme] Court's decisions, places cases involving only political association, only speech, or a combination of the two on a spectrum."). "Where nonpolicymaking, nonconfidential employees are discharged solely because of their private political views, little, if any weighing of an employee's First Amendment rights against an

---

fails as to Farmer individually. Additionally, Farmer is the only individual defendant who raises a qualified immunity defense. The Court will address that defense later in this opinion.

employer's right to loyal and efficient service is necessary, and the employee's rights will usually prevail. On the opposite end of the spectrum, however, are cases where employees' exercise of First Amendment privileges clearly over-balanced their usefulness." *Maldonado*, 932 F.3d at 392 (internal quotations and citations omitted). "[W]here a public employee… occupies a confidential or policymaking role, the employer's interests more easily outweigh the employee's First Amendment rights." *Id*. "The ultimate issue thus requires balancing of the [employee's] First Amendment right to participate in political activity against the legitimate needs of the employer… to provide efficient public service." *Id*. "We make that determination based on the specific facts of each case." *Garza*, 972 F.3d at 729 (citing *Maldonado*, 932 F.3d at 392) ("The balancing test is case-specific.").

Here, the parties do not dispute that Vaughn is a confidential employee for purposes of this analysis. Therefore, the Court need not address that aspect of this inquiry. "Concluding an employee occupies a confidential or policymaking role, however, does not completely answer whether the employee can properly be subject to patronage dismissal." *Garza*, 972 F.3d at 729. "While the labels 'policymaker' and confidential' are helpful, 'the ultimate question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." *Id.* (quoting *Branti*, 445 U.S. at 518, 100 S. Ct. 1287). In *Garza*, the Fifth Circuit, relying on its decision in *Vojvodich*, explained that in order to "answer that question, some of [its] cases also ask whether the employee's activities in some way adversely affected the government's ability to provide services." *Id.* (internal quotations and citations omitted).

The Defendants present arguments surrounding the *Pickering-Connick* balancing test to support their argument that Vaughn was subject to patronage dismissal.[14] However, the Court notes that the Defendants do not provide extensive argument relative to whether Vaughn's *political activity* in "some way adversely affected the government's ability to provide services" as considered by the Fifth Circuit in *Garza*. *Id.* The only potential disruption to the tax office that the Defendants allege is based on complaints that Vaughn campaigned for Walker's opponent while in the workplace. Defendants support this contention by referencing a single email thread between Farmer and the former Tax Assessor/Collector Allen Morgan. In the Court's view, this evidence does not conclusively establish that Vaughn disrupted the tax office and therefore declines to consider it. *See Brown*, 2019 WL 4050523 at *1 ("If the material is scanty, incomplete, or inconclusive, the court will likely refuse to convert the motion [to a summary judgment motion].").[15] The Court is cognizant that courts within the Fifth Circuit do "not require employers to wait until their office is disrupted before taking action." *Garza*, 972 F.3d at 732. Nonetheless, "[e]very one of [the *Pickering-Connick*] factors depends on the consequences of the employee's… First Amendment activity which gives rise to the balancing of interests." *De La Garza v. Brumby*, 2013 WL 754260, at *4 (S.D. Tex. Feb. 27, 2013); *see also Vojvodich*, 48 F.3d at 885-86. The Defendants must rely on some factual allegations that demonstrate how Vaughn's political activity

---

[14] In balancing the employee's and the government's interest in the context of First Amendment claims, the Fifth Circuit employs the *Pickering-Connick* balancing test and considers "(1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employer's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers." *Jordan v. Ector Cnty.*, 516 F.3d 290, 299 (5th Cir. 2008).

[15] Specifically, the particular email relied upon by the Defendants states that alleged complaints were made to Farmer regarding a clerk campaigning in the tax office, but Farmer's email does not identify Vaughn by name as being the clerk complained of. The email provides no context as to the alleged activity complained of nor does it identify which candidate was being campaigned for.

"adversely affected the government's ability to provide services." *Garza*, 972 F.3d at 729. They fail to sufficiently do so.

The Defendants' arguments relative to the *Pickering-Connick* factors do not warrant a finding in their favor despite Vaughn's status as a confidential employee. Again, as to the first factor, Vaughn's campaigning for a political candidate involved a matter of public concern. *See Maldonado*, 932 F.3d at 391. Regarding the time, place, and manner of Vaughn's activity (factor two), the Defendants appear to merge their argument with factor four. They argue that even if Vaughn's campaigning occurred outside of the office "it would be considered by most employers insubordinate or hostile behavior toward the employer." [51] at p. 45. But they provide no facts from this case to support that contention. The Defendants' arguments concerning factor three overlap, in part, with Vaughn's status as a confidential employee, which as explained above is alone insufficient to warrant political patronage dismissal. Aside from those arguments regarding factor three, the Defendants contend that the relationship between Vaughn and Walker "would be strained at best and could prevent…efficient performance of the duties of the office" and that Walker should be able to appoint a deputy in whom she trusts. *Id.* at p. 44. At the same time, this argument is undermined by the Defendants' own contention that Vaughn was not terminated for her political activity. *See Jordan*, 516 F.3d at 299. Relevant to factor four (whether the employee's activity may be characterized as hostile, abusive, or insubordinate), the Defendants point to the email from Farmer to Morgan regarding complaints that Vaughn was campaigning in the office, which the Court has noted above as lacking in sufficient factual detail. Other than that, as to factors four and five, the Defendants discuss other actions allegedly taken by Vaughn which appear unrelated to her political activity.[16] In sum, the Defendants do not point to any facts which would

---

[16] Specifically, the County contends that Vaughn shredded large amounts of public documents prior to Walker's first day in office but provides no context as to what those documents consisted of and why that

support an actual or potential disruption of the tax office due to Vaughn's political activity. *See Vojvodich*, 48 F.3d at 885-86 (holding that "there simply is no countervailing state interest to weigh against the employee's First Amendment rights" where sheriff did not allege that the employee's political activity "actually or potentially affected the Sheriff's Office's ability to provide services[.]"); *see also Jordan*, 516 F.3d at 299. The Court finds that this inquiry requires further development of the facts.

As noted, Vaughn has plausibly alleged a prima facie claim of First Amendment political retaliation. For the reasons explained above, the Court does not find that the Defendants have, at this stage of the proceedings, met their burden of proving that Vaughn was subject to political patronage dismissal under the *Elrod-Branti* exception.

2. *Equal Protection Claim*

Next, the Court turns to Vaughn's Equal Protection claim brought against all Defendants. Vaughn alleges that she was terminated from her employment due to her race (White). As to this claim, Walker did not join in the County's arguments for its dismissal and therefore has not requested dismissal of this claim as against her.[17] Thus, the Court will only reference the County and Farmer's arguments.

The County and Farmer take a similar position as to this claim. They rely on *Crain v. City of Selma*, 952 F.3d 634 (5th Cir. 2020) to support their argument that the claim fails because Vaughn has not identified a similarly situated comparator. In *Crain*, the Fifth Circuit explained

---

alleged act could be considered hostile behavior. The County does not in any way link that alleged act with Vaughn's political activity in campaigning for Montgomery. It also references Vaughn working on "the previous administration's books during work hours[,]" yet it does not allege that Montgomery, Walker's political opponent, was part of the previous administration. [51] at p. 45. To the contrary, the County identifies Allen Morgan as the former Tax Assessor/Collector prior to Walker. Again, the County makes no connection between these allegations and Vaughn's political activity in support of Montgomery.

[17] The Court reiterates that Walker has not sought dismissal based on qualified immunity at this time.

that "[t]o state a claim of racial discrimination under the Equal Protection Clause and [S]ection 1983, the plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id.* at 642. However, *Crain* was not an employment discrimination case and for that reason the applicable law in this case differs. *See id.* at 638 ("Crain… argu[ed] that defendants discriminated against him on the basis of race when they denied him access to the ballot.").

In the context of Equal Protection claims for intentional discrimination in employment, the Fifth Circuit applies the same factors required to establish a prima facie case for race discrimination under Title VII and Section 1981. *See Hopkins v. Wayside Sch.*, 2024 WL 3738478, at *12 (5th Cir. Aug. 9, 2024) ("[O]ur inquiry into intentional discrimination in employment is essentially the same for individual actions brought pursuant to 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment…, and Title VII[.]"); *Boutwell v. Singing River Hosp. Sys.*, 2006 WL 21558, at *4 (S.D. Miss. Jan. 4, 2006) ("When [S]ection 1983 is used as a parallel remedy to transgressions under Title VII, however, the elements do not differ."); *Monteverde v. New Orleans Fire Dep't*, 124 F. App'x 900, 904 (5th Cir. 2005).

To establish a prima facie case of race discrimination, Vaughn must show that she "(1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarly situated employees who were not in her protected class." *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 875 (5th Cir. 2019) (citing *Alkhawaldeh v. Dow Chemical Co.*, 851 F.3d 422, 426 (5th Cir. 2017)). There is no dispute that the First Amended Complaint [14] alleges facts to support all elements of a prima facie case of race discrimination, including that Vaughn was replaced by a Black person. Absent further argument on the part of the

County as to this claim, the Court finds that Vaughn has adequately pled a constitutional violation as to the County.[18]

The Court turns to Farmer. She generally argues in her Memorandum [51] that "[b]ecause there is no statutory authority, allegations in Vaughn's Complaint, or evidence in the record that Defendant Farmer *was involved or actually terminated* Vaughn, all of her claims fail and Defendant Farmer is entitled to qualified immunity." [53] at p. 15 (emphasis in original). Though Farmer appears to raise this argument in asserting her qualified immunity defense, the Court will consider it in relation to the existence of a potential constitutional violation since she generally contends that "all" of Vaughn's federal claims fail on that basis. *Id.* Again, Vaughn's termination is the crux of her Equal Protection claim. The First Amended Complaint [14] does not allege that Farmer was personally involved in the decision to terminate Vaughn and therefore no constitutional violation is pled against Farmer. *See Sanchez v. Griffis*, 569 F. Supp. 3d 496, 516 (W.D. Tex. 2021) (explaining that "[t]here must be some showing of personal involvement by a particular individual defendant to prevail against that individual" on a Section 1983 claim) (citing *Champagne v. Jefferson Par. Sheriff's Off.*, 188 F.3d 312, 314 (5th Cir. 1999)). Resultantly, the Court's inquiry into her individual liability under Section 1983 ends here. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional

---

[18] The Court does not extensively address this claim as against the County because it raises no arguments as to the applicable elements of Vaughn's discrimination claim brought pursuant to Section 1983. Since the same standard applies to this claim and Vaughn's discrimination claims pursuant to Title VII and Section 1981, the Court has also looked to the County's arguments regarding the prima facie elements of those claims. However, the County does not contest that Vaughn has pled a prima facie claim of discrimination in seeking dismissal of those claims. For example, with respect to Vaughn's Title VII claim, the County argues that "[i]f this Court finds… that [Vaughn] has set forth a prima facie case, [the County] had legitimate, nondiscriminatory reasons for her termination." [51] at p. 21. The County does not, however, analyze the prima facie elements under Title VII much less raise any argument that the elements are not adequately pled. *See id.* The County raises other arguments regarding Vaughn's Title VII claim, such as alleging that it is not Vaughn's Title VII employer, but those arguments are not relevant in this context. The County does not address the correct elements in seeking dismissal of the Section 1981 claim. *See* [51] at p. 24.

right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity."). Having concluded that the First Amended Complaint [14] fails to allege that Farmer was personally involved in the decision to terminate Vaughn, the Court need not analyze qualified immunity because there is no constitutional violation pled against her as required by the first prong of Section 1983.

The Court now turns to the defense advanced by the County with respect to Vaughn's claims brought pursuant to Section 1983.

### B. Municipal Liability

Having concluded that Vaughn has plausibly alleged First Amendment retaliation and Equal Protection claims, the Court turns to whether Vaughn has adequately alleged facts to establish municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

It is well-established that municipal liability under Section 1983 "may not be found on a theory of *respondeat superior*, but instead must be premised upon 'some official action or imprimatur.'" *Smith v. City of Madison, Miss.*, 364 F. Supp. 3d 656, 664 (S.D. Miss. Oct. 23, 2018) (quoting *Valle*, 613 F.3d at 541) (in turn quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). For municipal liability to attach, there must be "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell*, 436 U.S. at 694, 98 S. Ct. 2018). "The 'plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Vess v. City of Dallas*, 608 F. Supp. 3d 434, 447 (N.D. Tex. 2022) (quoting *Valle*, 613 F.3d at 542).

"[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the [municipality] may be liable." *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 462 (5th Cir. 2000). "A single decision, such as the decision to terminate a municipal employee, may therefore create municipal liability only where the decision is made by a final policymaker or the improper motive can be imputed to the final policymaker." *Smith*, 364 F. Supp. 3d at 664 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005); *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001)).

The County concedes (for purposes of its instant Motion [49] only) that Walker "could be considered a final policymaker with regard to employment decisions within her office." [51] at p. 50. In her Response Memorandum [81], Vaughn relies on the "single decision by a final policymaker" theory of liability.[19] The parties do not dispute that Walker made the decision to terminate Vaughn.

The County correctly points out that the single decision exception "'requires the *deliberate* choice to follow a course of action… made from among various alternatives by the official or officials responsible for establishing final policy *with respect to the subject matter in question.*'" *Degollado v. City of Port Lavaca, Texas*, 2025 WL 976603, at *12 (S.D. Tex. Mar. 31, 2025) (quoting *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019)) (emphasis in original). In its Memorandum [51], the County argues that Vaughn fails to allege in her First Amended Complaint [14] that Walker was deliberately indifferent to her constitutional rights when Walker decided to terminate her. Relatedly, the County argues that Vaughn does not allege that Walker

---

[19] Vaughn additionally argues that Farmer and the County are final policymakers. In light of the County's concession that Walker could be considered a final policymaker, the Court need not address those arguments.

"considered numerous alternatives and then chose to act in a manner violating her constitutional rights." [51] at p. 51.

Though neither party acknowledges it, courts within the Fifth Circuit recognize that "where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving… issues of fault and causation is straight forward." *Arredondo v. Flores*, 2006 WL 2459460, at *2 (S.D. Tex. Aug. 22, 2006) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)) (emphasis in original). "Proof that a municipality's authorized decisionmaker 'has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.'" *Id.* (quoting *Brown*, 520 U.S. at 404, 117 S. Ct. 1382).

In *Flores*, the plaintiffs, former employees of the Webb County, Texas Sheriff's Department, sued Rick Flores and Webb County alleging that Flores terminated them in retaliation for their support of Flores' political opponent in his campaign for county sheriff. *Id.* at *1. In analyzing the issue of municipal liability at the motion to dismiss stage, the District Court for the Southern District of Texas determined that Flores was a final decisionmaker with respect to employment decisions in the sheriff's department and that his decision to terminate the plaintiffs' employment constituted an official policy of Webb County. *Id.* at *2. The court, relying on *Brown*, held that the plaintiffs had sufficiently stated a claim for municipal liability where they alleged that Flores had intentionally terminated their employment in retaliation of them having exercised their First Amendment rights. *Id.* Specifically, the court concluded that the plaintiffs' claim "sufficiently allege[d] both culpability and causation—that is, it allege[d] a culpable motive, and allege[d] that Plaintiffs' constitutional deprivations were the result of Defendant Flores' actions as a final decisionmaker." *Id.* In rejecting Webb County's argument that the plaintiffs sought to

impose vicarious liability against it, the court reiterated that "[p]laintiffs assert an official policy that was the proximate cause of their constitutional injury, not merely vicarious liability." *Id.* at *3.

Here, as in *Flores*, Vaughn alleges in her First Amended Complaint [14] that Walker acted intentionally and in bad faith in terminating her in retaliation for her exercise of First Amendment rights and for discriminatory reasons.[20] All of Vaughn's Section 1983 claims are based on Walker's employment decision as a policymaker of the County. Accepting Vaughn's allegations as true, she sufficiently alleges that Walker's employment decision *itself* violated her constitutional rights. *See Reyna v. Garza*, 569 F. Supp. 3d 567, 584 (S.D. Tex. 2021) (quoting *Brown*, 520 U.S. at 405, 117 S. Ct. 1382) ("[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.").

At this stage of the proceedings, the Court finds that Vaughn has plausibly stated a *Monell* claim against the County. *See id.* (holding that plaintiff's allegations satisfied the culpability and causation elements of his *Monell* claim on the same basis).

## C. *Remaining Federal Claims*

Vaughn also brings race discrimination claims pursuant to Section 1981 and Title VII against all Defendants. The Court will address these claims in turn.

### 1. *Section 1981*

The Defendants seek dismissal of Vaughn's Section 1981 claim on its merits for varying reasons. The County argues that the claim fails because it is not Vaughn's employer. Walker joins

---

[20] The Court is cognizant that Vaughn raises this allegation in a section of her First Amended Complaint [14] concerning one of her state law claims but nonetheless finds the contention overarching and relevant here.

in the County's Motion [49] and supporting Memorandum [51] "in so much as it applies to [her], including but not limited to," the County's arguments concerning the nondiscriminatory reasons for Vaughn's termination. [58] at p. 1. Farmer, for her part, argues that the claim should be dismissed because Vaughn does not identify a contract between her and Farmer, as well as for other reasons. The Court does not need to extensively address these arguments to find that Vaughn's Section 1981 claim is subject to dismissal.

First, Vaughn fails to respond to the County's arguments regarding this claim in her Response Memorandum [81] and therefore has abandoned the claim as against the County. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("[A] party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.") (citations omitted). Since Walker joins, in part, in the County's arguments, Vaughn's claim could be deemed abandoned as to Walker as well. It is unnecessary for the Court to grapple with that dilemma because this claim fails for alternative reasons as to all Defendants.

Assuming *arguendo* that the County is Vaughn's employer, Vaughn's claim fails because "[t]here is no private right of action under § 1981 against a public employer." *Claiborne v. Mississippi Bd. of Pharmacy*, 2011 WL 3684431, at *4 (S.D. Miss. Aug. 22, 2011) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)); *see also Oden v. Oktibbeha County*, 246 F.3d 458, 463–64 (5th Cir. 2001). "To achieve redress for discrimination or retaliation claims against a public employer, a plaintiff must sue under [Section] 1983[.]" *Id.* (citing *Oden*, 246 F.3d at 463–64). Vaughn does so in this case. As such, her Section 1981 claim against the County is due to be dismissed.

Further, Vaughn does not make clear her basis for imposing Section 1981 liability against Farmer and Walker in their individual capacities. In response to Farmer's Motion [52], Vaughn

argues that "Farmer and Walker are agents of Defendant County in dealing with Vaughn's employment…" and that Farmer and Walker are "essentially one and the same." [79] at p. 14. If that is the case, then the claim fails against Farmer and Walker by extension because it does so against the County for the reason explained above. It is also undisputed that Farmer is not Vaughn's employer. And, as it pertains to Walker's individual liability, it is well established that "[Section] 1981 does not impose 'personal liability on elected officials for discrimination in the terms and conditions of local government employment contracts.'" *Hill v. Brown*, 2022 WL 3094329, at *6 (W.D. La. July 19, 2022) (quoting *Oden*, 246 F.3d at 464). Accordingly, this claim is also due to be dismissed against Farmer and Walker, individually.

### 2. *Title VII*

Vaughn asserts a Title VII race discrimination claim against all Defendants.

As an initial matter, Vaughn concedes that Farmer, individually, is not her employer under Title VII. This claim is therefore dismissed as to Farmer. With regard to the remaining defendants, the Court will first address the parties' arguments relevant to the County and then turn to Walker's position concerning this claim.

The County disputes that it is Vaughn's Title VII employer and primarily seeks dismissal of this claim on that basis. Additionally, it argues that Vaughn is not the type of employee that can avail herself of the protections of Title VII. The Court will address each of these arguments.

### i. *Vaughn's Employer under Title VII*

"Title VII allows employees to sue their employers for discriminatory employment decisions." *Oden*, 246 F.3d at 465 (citing 42 U.S.C. §§ 2000e–2(a), 2000e–5). "Determining whether a defendant is an 'employer' under Title VII involves a two-step process." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). "First, the court

must determine whether the defendant falls within Title VII's statutory definition of an 'employer.'" *Id.* Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees…, and any agent of such a person." 42 U.S.C. § 2000e(b). "A person 'includes one or more individuals, governments, governmental agencies, or political subdivisions… .'" *Id.* (quoting 42 U.S.C. § 2000e(a)). "If the defendant meets this definition, the court must then analyze whether an employment relationship exists between the plaintiff and the defendant." *Muhammad*, 479 F.3d at 380.

Relevant here, the County "does not dispute that it could be considered an employer under Title VII" but "does dispute that it is Vaughn's employer under Title VII." [51] at p. 10. Thus, the Court moves on to this second step of the inquiry.[21]

To determine whether an employment relationship exists within the meaning of Title VII, the Fifth Circuit applies the hybrid economic realities/common law control test. *Id.* "The most important component of this test is the right to control the employee's conduct." *Id.* (internal quotation marks and citations omitted). "When examining the control component, we have focused on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the employee." *Id.* (internal quotation marks and citations omitted). In determining whether a person or entity is an employer under Title VII, federal law controls "but courts can look to state law to understand the nature of the employment relationship." *Oden*, 246 F.3d at 465. "The economic realities component of the test focuses on 'whether the alleged employer paid the

---

[21] The Court acknowledges that in her Response Memorandum [81] Vaughn raises arguments concerning an alleged agency relationship between Walker and the County. However, because the County does not dispute that the first step is met, then it is unnecessary for the Court to determine whether or not Walker is the County's agent. Vaughn does not bring her Title VII claim against Walker in her official capacity—she brings her claim against the County. If the County meets the definition—and here it concedes that it does—then "the court must then analyze whether an employment relationship exists between the plaintiff and the [County]." *Muhammad*, 479 F.3d at 380. The apparent agency issue is of no consequence to this inquiry.

employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.'" *Muhammad*, 479 F.3d at 380 (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir. 1993)).

The County argues that the Tax Assessor/Collector is the sole decisionmaker in the hiring and firing of employees of its office and the County's Board of Supervisors has no authority in that regard. Similarly, it argues that only the Tax Assessor/Collector sets the work schedules of its deputies as well as their terms and conditions of employment. The County points to Mississippi statutory law to support its argument that no employment relationship exists between it and Vaughn.

Concerning the control component, the County cites to Mississippi Code Section 27-1-9, which provides, in pertinent part, that "[e]ach assessor and tax collector shall appoint a sufficient number of deputies to assist him in carrying out the duties of his office and fix their compensation, subject to the budget for the assessor and tax collector's office approved by the county board of supervisors." MISS. CODE ANN. § 27-1-9(a). It also relies on advisory opinions rendered by the Mississippi Attorney General which provide some guidance regarding Mississippi Tax Assessor/Collectors' authority to make employment decisions contrasted from that of a county's Board of Supervisors. *See* 2001 WL 1513771, at *1 (Miss. A.G. Oct. 5, 2001) (finding no authority for the board of supervisors to appoint deputy tax assessors and stating that, pursuant to Sections 27-1-3 and 27-1-9 of the Mississippi Code, "the tax assessor-collector has the authority to hire and fire employees of the tax assessor's office and that the Board of Supervisors is without the authority to reinstate an employee that has been terminated from the Tax Assessor's office."). As for the economic realities portion of the test, the County "does not dispute that employees in the Tax Assessor's Office receive their paychecks from Oktibbeha County and that the County offers

retirement and other benefits to the employees." [51] at p. 17. However, it again asserts that Mississippi Code Section 27-1-9 specifies that Tax Assessors/Collectors are to submit a budget, which includes the compensation amount for deputy clerks, to the Board of Supervisors for approval. Therefore, according to the County, employee salaries are determined solely by the Tax Assessor/Collector.

In her Response Memorandum [81], Vaughn does not specifically address the Mississippi statutes cited by the County, but she does argue that "the attorney general opinions are relevant only to the extent that they define the structures of hiring and firing authority within the tax assessor's office." [81] at p. 8.[22] Vaughn further argues that there is "no legally distinct entity" other than the County that could be Vaughn's Title VII employer.

The Court finds instructive the Fifth Circuit's decision in *Muhammad*, 479 F.3d at 377. In *Muhammad*, the plaintiff, a former probation officer in Dallas County, Texas, sued the Dallas County Community Supervision and Corrections Department for race discrimination and retaliation under Title VII. *Id.* at 378. The defendant sought dismissal of the claims under Rule 12 alleging that, as a matter of law, it was not the plaintiff's Title VII employer. *Id.* at 379. In deciding whether defendant was plaintiff's employer for purposes of Title VII, the district court, relying on *Clark v. Tarrant Cnty., Texas*, 798 F.2d 736 (5th Cir. 1986), "refrained from invoking the hybrid economic realities/common law control test or resorting to Texas state law because it concluded that federal law (i.e., *Clark*) decided the issue" under near identical circumstances. *Id.* at 381. On appeal, the Fifth Circuit rejected the district court's interpretation of *Clark* stating:

---

[22] Vaughn appears to raise this argument in response to the County's contention that Vaughn is excepted from Title VII's definition of employees covered under the Act. Because the County relies on the same statutory authorities and attorney general opinions to support both of the arguments advanced in its Memorandum [51], the Court acknowledges Vaughn's response concerning those authorities in this subsection.

> *Clark* does not stand for the proposition that a community supervision and corrections department is, as a matter of law, not a probation officer's Title VII employer… Rather, *Clark* simply holds that county is not a probation officer's Title VII employer when "the evidence before the court *and* Texas case law clearly demonstrate that the County has no authority to set salaries or to decide promotion of adult probation officers, and there is no contrary evidence."

*Id.* (quoting *Clark*, 798 F.2d at 747-48) (emphasis added).

In reversing the district court's holding that defendant was not plaintiff's Title VII employer, the Fifth Circuit explained that "[t]he hybrid economic realities/common law control test is necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law *and the evidence* relevant to the employment relationship." *Id.* at 382 (emphasis added). The district court was directed to make further factual findings about the nature and circumstances of plaintiff's position. *Id.* at 383.

As *Muhammad* makes clear, not only is state law relevant for the Court to determine whether an employment relationship exists between Vaughn and the County, but the Court must also consider the facts relevant to Vaughn's position as a bookkeeper/deputy clerk as established in the record. Aside from relying on Mississippi statutory law and opinions of the Mississippi Attorney General, the County relies on scant evidence to support its position that the County is not Vaughn's Title VII employer. The County only points to an email from the former tax assessor/collector to the County Administrator expressing that the deputies in the tax office are his employees; however, the context of the email surrounds a dispute on how the County Administrator handled a complaint she allegedly received. The email sheds no light on *the County's* right (or lack thereof) to make employment decisions over Vaughn. Aside from this evidence, the County points to a memo addressed to the "payroll department" approving a payroll

37

change based on Vaughn's discharge and blank payroll sheets. Without more, the Court lacks sufficient context to make any inferences based on those documents. Accordingly, the Court declines to consider the evidence submitted by the County.

The County additionally argues that the Fifth Circuit's 2001 decision in *Oden v. Oktibbeha Cnty., Miss.* is "controlling authority [which] has found that a county-elected official is the proper employer under Title VII, rather than the County itself." [87] at p. 12. In that case, the Fifth Circuit reversed a district court's judgment against Oktibbeha County upon determining that the sheriff, in his official capacity, was the plaintiff's Title VII employer. *Oden*, 246 F.3d at 465. The Fifth Circuit considered Mississippi statutory law in making its determination. *Id.*

The County argues that the "reasoning and facts relied upon in *Oden*… are almost identical to the facts in the case at bar." [87] at p. 12. The Court disagrees. The only comparable aspect of *Oden* and the case *sub judice* lies in that the language of the Mississippi statutes considered in that case are similar to the Mississippi statutory law on which the County now relies. However, as the Fifth Circuit explained in *Muhammad*, the Court cannot rely on state law alone in determining whether an employment relationship exists. To the extent the County is asking for this Court to find as a matter of law, pursuant to *Oden*, that the County is not Vaughn's employer, *Muhammad* forecloses that too. *See Muhammad* 479 F.3d at 383 (reversing the district court's holding after it solely relied on federal case law without considering state law and factual evidence to determine whether defendant was plaintiff's employer under Title VII). As with other claims, this inquiry will require further development of the facts.

ii. *Personal Staff Exception*

Next, the County argues that Vaughn's Title VII claim fails because she is not a covered employee under Title VII. "Title VII limits the class of employees who can take advantage of its

provisions." *Saddler v. Quitman Cnty. Sch. Dist.*, 278 F. App'x 412, 416 (5th Cir. 2008). The definition of employee under Title VII excludes "'any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff… .'" *Id.* at 416-17 (quoting 42 U.S.C. § 2000e(f)).

Prior to addressing the parties' arguments on the applicability of this exception, the Court will address Vaughn's argument that the County has waived this exception in failing to raise it as an affirmative defense in its Answer [27]. *See Oden*, 246 F.3d at 465 ("The personal staff exception is an affirmative defense that must be pleaded under Rule 8(c).").

A defendant is required to state affirmative defenses in its responsive pleadings pursuant to Federal Rule of Civil Procedure 8 and "[f]ailure to comply with this rule may result in waiver." *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017). "Affirmative defenses must be pled 'with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced.'" *Green Hills Dev. Co., LLC v. Oppenheimer Funds*, Inc., 2022 WL 370235, at *1 (S.D. Miss. Feb. 7, 2022) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)).

The County argues that it has not waived the affirmative defense of the personal staff exception and directs the Court to the "First Affirmative Defense" in its Answer [27]. Specifically, the County argues that because its "First Affirmative Defense" states that Vaughn "was an employee of a county-wide elected official" it has sufficiently stated the defense in its responsive pleading. [87] at p. 10. Notably, the County makes this allegation under its "First Affirmative Defense" which is followed by a subheading labeled "(§1983 Claim)." [27] at p. 1. The affirmative defense does not mention Title VII. In the Court's view, this single statement asserted under a Section 1983 subheading lacks sufficient specificity to place Vaughn on notice that the personal

staff exception is being raised as an affirmative defense to her Title VII claim. The defense could be considered waived. Nonetheless, the Fifth Circuit has held that "if the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, then a technical failure to comply precisely with Rule 8(c) is not fatal." *Thermotek, Inc.*, 875 F.3d at 771 (internal quotation marks and citations omitted).

A defendant avoids waiver of an affirmative defense if "(1) the defendant raised the affirmative defense at a pragmatically sufficient time and (2) the plaintiff was not prejudiced in its ability to respond." *Id.* (internal quotation marks and citations omitted). Here, Vaughn does not argue that she has suffered any prejudice in her ability to respond to this defense because it was not specifically stated in the County's Answer [27]. The Court finds, based on Fifth Circuit precedent, that the County raised this defense at a "pragmatically sufficient time." *See Thermotek, Inc.*, 875 F.3d at 771 ("We have repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later."). Vaughn provides no argument to support a contrary finding. The Court rejects her waiver argument.

Turning to the parties' arguments regarding whether this exception applies to Vaughn, it is undisputed that the Tax Assessor/Collector is a person elected to public office and that Vaughn worked as a bookkeeper/deputy clerk in the Tax Assessor/Collector's office. Notably, "Title VII does not define 'personal staff.'" *Saddler*, 278 F. App'x at 417. The Fifth Circuit considers a nonexhaustive list of factors to determine whether a plaintiff qualifies as "personal staff" of a public official:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the

40

> position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id.* (citing *Teneyuca v. Bexar County,* 767 F.2d 148, 151 (5th Cir.1985)).

The Fifth Circuit has cautioned that "consideration of these factors must be tempered by the legislative history of this provision which indicates that the exception is to be narrowly construed." *Id.* (internal quotation marks and citations omitted). Similar to an employer status under Title VII, "'a plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law.'" *Muhammad* 479 F.3d at 382 (quoting *Calderon v. Martin Cnty.*, 639 F.2d 271, 272-73 (5th Cir. 1981)). In analyzing the above factors, the County relies on the same Mississippi statutory law and Attorney General opinions as it did to support its argument that it is not Vaughn's Title VII employer. The County also relies on much of the same evidence, which the Court has already explained lacks necessary context and detail. The Court declines to consider that evidence for the same reason it did above.

The Fifth Circuit has described consideration of the above factors as "a fact-intensive inquiry" that "does not lend itself well to disposition by summary judgment, though [it] is not a categorical prohibition." *Saddler*, 278 F. App'x at 417 (quoting *Teneyuca*, 767 F.2d at 151) (internal quotation marks omitted). Vaughn argues that, at this stage of the proceedings, the Court is without sufficient evidence to properly analyze the above factors. The Court agrees— particularly in light of its finding that the evidence the County has presented at this juncture does not aid the Court in reaching a conclusive decision. Further development of the facts is necessary for the Court to conduct this "fact-intensive inquiry." *Id.*[23]

---

[23] The County alternatively argues that it has provided a legitimate, non-discriminatory reason for Vaughn's termination and that Vaughn has failed to show pretext under the *McDonnell Douglas* burden-shifting framework. Since the Court has declined to convert the pending Motions [49, 52] for judgment on the pleadings to motions for summary judgment, it is not proper for the Court to conduct an analysis under

### iii. *Walker—Individually*

The Court will now address Walker's position as to this claim. With respect to Walker's individual liability, the Court again notes that Walker joins in the County's Motion [49] and supporting Memorandum [51] "in so much as it applies to [her], including but not limited to," the County's arguments concerning the nondiscriminatory reasons for Vaughn's termination. [58] at p. 1. However, Walker does not otherwise seek dismissal of Vaughn's Title VII claim on the basis that she, in her individual capacity, is not Vaughn's employer. Notwithstanding her omission, Title VII does not provide for individual liability against Walker. *See Bailey v. Dallas Cnty. Sch.*, 2016 WL 7638146, at *5 (N.D. Tex. Dec. 9, 2016) ("Any Title VII claims against [defendants] in their individual capacities are not cognizable under Fifth Circuit law.") (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)); *see also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir.2003) ("Individuals are not liable under Title VII in either their individual or official capacities.").

Because Vaughn's Title VII claim against Walker in her individual capacity is foreclosed by law, the Court is, on its own initiative, considering dismissing the claim pursuant to Federal Rule of Civil Procedure 56(f)(1). Vaughn is hereby directed to show cause as to why this claim should not be dismissed and is directed to file a response in this regard within 14 days from the date of this Order. If she fails to do so, the Court will dismiss the Title VII claim against Walker.

Having addressed Vaughn's federal claims, the Court turns to her state law claims.

---

*McDonnell Douglas* at this stage of the proceedings. *See Johnson v. Halstead*, 916 F.3d 410, 421 n.4 (5th Cir. 2019) ("[T]he *McDonell Douglas* framework used for evaluating circumstantial evidence at summary judgment does not apply at the pleading stage.") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).

### D. State Law Claims

Vaughn asserts three state law claims including wrongful discharge in violation of public policy against the County, violation of Mississippi's Whistleblower Protection Act against all Defendants, and tortious interference with employment against Farmer and Walker.

#### 1. Wrongful Discharge (*McArn claim*)

In Mississippi, a claim for wrongful discharge in violation of public policy is recognized as an independent tort claim. *See Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 218 (Miss. 2015) (citing *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993)). Again, Vaughn brings this claim against the County only. The County argues that this claim should be dismissed for procedural and substantive reasons.

First, the County contends that Vaughn failed to appeal the Board of Supervisor's approval of the payroll change for Vaughn due to her termination (an avenue available under Mississippi statutory law). The County further argues that, because Vaughn did not appeal the payroll change approval, she in turn failed to exhaust all administrative remedies under the Mississippi Tort Claims Act ("MTCA"). This argument is easily rejected.

The County points to Mississippi statutory law providing that "[a]ny person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal the judgment or decision to the circuit court of the county in which the board… is located." MISS. CODE ANN. § 11-51-75. To be clear, Vaughn's *McArn* claim is based on the premise that she was terminated for reporting Walker to the State Auditor's office. *See* [14] at p. 5. In her Response Memorandum [81], Vaughn argues that her grievance lies in the termination decision. The Court agrees and finds the County's argument misplaced.

43

Unless the County now changes its litigation stance to concede that Vaughn's termination was the decision, or partially the decision, of the Board of Supervisors, Mississippi Code Section 11-51-75 is inapplicable here. The County does not contend that its approval of the payroll change for Vaughn finalized Vaughn's termination or that the approval formed part of the decision to terminate Vaughn. In fact, the County has profusely argued that the Tax Assessor/Collector has the sole authority to hire and fire deputy clerks in the tax office. A central issue in this case is whether the County made any employment decisions pertaining to Vaughn. There is no requirement for Vaughn to appeal a decision by which she is not aggrieved—unless it was part of the termination decision. The County does not direct the Court to any other procedure which Vaughn did not follow under the MTCA. Having resolved that procedural issue, the Court turns to the parties' arguments on the merits of this claim.

"A *McArn* claim alleging wrongful discharge in violation of public policy is based on an employer's duty not to thwart the public interest by terminating employees for speaking the truth." *Barrentine*, 160 So. 3d at 220. In order to state a *McArn* claim, a plaintiff must allege that "(1) plaintiff was an employee of the defendant, (2) an illegal act by the employer, [and] (3) plaintiff was terminated because they reported the illegal act of the employer." *Brandi's Hope Cmty. Servs., LLC v. Walters*, 391 So. 3d 162, 170 (Miss. 2024). The County contests the first and third elements of this claim.

As to the first element, the County argues that Vaughn was not its employee. It incorporates all arguments it raised in relation to Vaughn's Title VII claim. *See* [51] at p. 56. ("Vaughn is not [the County's] employee for all the reasons set forth in Section IV.A.1.i above… ."). Importantly, the County's arguments concerning the Title VII claim address definitions and standards for "employer" and "employee" status that are specific to Title VII claims. The County does not

provide the Court with any authority which indicates that those same definitions apply to Vaughn's *McArn* claim. The Court finds that the County has not adequately briefed its argument. *See McMahan v. U.S. Bank Nat'l Ass'n*, 2024 WL 2243301, at *17 (S.D. Tex. Apr. 11, 2024) (explaining that an argument that is not sufficiently briefed is waived). The First Amended Complaint [14] alleges that Vaughn was employed with the County. *See* [14] at p. 3. She has sufficiently pled the first element of this claim.

Regarding the third element, the County argues that Vaughn was terminated due to insubordination and not because she reported Walker's alleged illegal activity to the State Auditor. It does not contest that the First Amended Complaint [14] alleges that Vaughn was terminated because of her report. The Court declines to dismiss this claim.

### 2. Whistleblower Claim

Vaughn asserts a claim against all Defendants for violation of the Mississippi Whistleblower Protection Act ("MWPA"). Walker does not seek dismissal of this claim and therefore the claim will proceed as against her. The Court will address Farmer and the County's respective positions in seeking dismissal of this claim.

The MWPA is "codified at Mississippi Code Sections 25-9-171 to -177" and "prohibits a governmental employer from taking any 'reprisal or retaliatory action' against a governmental employee (whistleblower) 'who in good faith reports an alleged improper governmental action to a state investigative body, initiating an investigation.'" *Johnson v. Miller*, 396 So. 3d 1137, 1140 (Miss. 2024) (quoting MISS. CODE ANN. § 25-9-171(j)).

As previously noted, Vaughn concedes that Farmer is not her employer. This claim is therefore dismissed as against Farmer, individually.[24]

---

[24] Additionally, the MWPA provides that "[n]o *agency* shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or

For its part, the County argues that Vaughn does not meet the definition of a "whistleblower" under the MWPA and that her termination was not a direct result of her report to the State Auditor. Regarding the County's first argument, the MWPA defines a "whistleblower" as:

> [A]n employee who in good faith reports an alleged improper governmental action to a state investigative body, initiating an investigation. For purposes of the provisions of Section 25-9-171 through 25-9-177, the term "whistleblower" also means an employee who in good faith provides information to a state investigative body, or an employee who is believed to have reported alleged improper governmental action to a state investigative body or to have provided information to a state investigative body but who, in fact, has not reported such action or provided such information.

MISS. CODE ANN. § 25-9-171(j).

The County places emphasis on the apparent "good faith" requirement. It argues that Vaughn did not file her report to the State Auditor in good faith because "her report was motivated solely out of spite because her preferred candidate in the election lost to the very person she reported and out of concern for her job." [51] at p. 57. In response, Vaughn argues that "[w]hether Vaughn acted in good faith depends upon whether she had a factual basis for her claim." [81] at p. 19.

The MWPA does not define "good faith" and the Court is unaware of any Mississippi law defining this term of art in this context. The Court will interpret the meaning of "good faith" using

---

provided information to a state investigative body whether or not the testimony or information is provided under oath." MISS. CODE ANN. § 25-9-173(1) (emphasis added). To state the obvious, Farmer, in her individual capacity, is not an agency. The only statutory provision concerning individuals states that "each member of any agency's governing board or authority may be found individually liable *for a civil fine* of up to Ten Thousand Dollars ($10,000.00) for each violation of Section 25-9-173." *Id.* § 25-9-175 (emphasis added). The MWPA does not provide for individual liability otherwise.

the same method of statutory interpretation used by the Mississippi Supreme Court. *See Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021).

The Mississippi Supreme Court has relatively recently held that "all words and phrases contained in the statutes are used according to their common and ordinary meaning[.]" *Watson v. Oppenheim*, 301 So. 3d 37, 42 (Miss. 2020) (internal quotations and citations omitted). "When a popular word is used that contains no statutory definition, it must be accepted in its popular sense." *Id.* (citing *Lambert v. Ogden*, 423 So. 2d 1319, 1321 (Miss. 1982)). "Absent a statutory definition of a term, our courts may properly consider dictionary definitions 'to ascertain the meaning of a word in its common or popular sense.'" *Id.* (quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1028 (Miss. 2011)).

The Court accordingly considers the dictionary definition of "good faith." Black's Law Dictionary defines "good faith" as:

> A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or absence of intent to defraud or to seek unconscionable advantage.

Good Faith, *Black's Law Dictionary* (12th ed. 2024).

Additionally, for context, the Court notes that the MWPA provides that "[a] governmental entity is not precluded from taking any action in accordance with established personnel policies against an employee who *knowingly and intentionally* provides false information to a state investigative body." MISS. CODE ANN. § 25-9-173(5) (emphasis added). Considering this provision in conjunction with the dictionary definition cited above, the County's argument fails. The County does not argue that Vaughn provided false information pertaining to Walker's alleged illegal activity to the State Auditor. It also does not provide the Court with conclusive evidence that

provides any insight into Vaughn's *state of mind* in making the report, much less that she did so with a dishonest or fraudulent purpose.

The County also incorporates its arguments made in relation to one of Vaughn's First Amendment retaliation claims, including its position that Vaughn did not speak on a matter of public concern because her report was personally motivated. *See* [51] at p. 57 (incorporating arguments raised in "Section IV.A.3.i.a" of the County's Memorandum [51]). Candidly, those incorporated arguments are not relevant to the applicable state law at issue here, and the Court finds that the County failed to adequately brief its argument. *See McMahan*, 2024 WL 2243301 at *17. The First Amended Complaint [14] alleges that Vaughn made her report to the State Auditor "as soon as she learned that it had occurred" and that she produced accurate records "documenting the theft." [14] at p. 4. Vaughn sufficiently alleges that she acted in good faith in making her report.

Finally, the County also contends that Vaughn has not alleged that her termination was a direct result of her report to the State Auditor because she alleges other reasons for her discharge. The MWPA provides that a whistleblower employee may not recover damages under the Act "unless the dismissal or adverse action taken against him was the direct result of providing information to a state investigative body." MISS. CODE ANN. § 25-9-173(3). As the Court has already concluded, Vaughn sufficiently pleads that she was terminated because she filed the report. This argument is rejected.

For the reasons stated above, Vaughn may proceed on this claim against the County and Walker.

### 3. Tortious Interference With Employment

Lastly, the Court turns to Vaughn's tortious interference with employment claim against Farmer and Walker. As with Vaughn's whistleblower claim, Walker does not seek dismissal of this claim and therefore the claim will proceed as against her.

"Tortious interference with an at-will employment relationship can form the basis of a claim under Mississippi law, and the elements of tortious interference with employment are the same as those for tortious interference with contract." *Joseph v. City of Moss Point, Mississippi*, 2021 WL 6752167, at *5 (S.D. Miss. Feb. 26, 2021) (citing *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999); *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001)). The elements of a claim for tortious interference with contract are:

> (1) defendant acted intentionally and willfully; (2) defendant's actions were calculated to cause damage to the plaintiff in her lawful business; (3) defendant's actions "were done with an unlawful purpose [of] causing damage and loss, without right or justifiable cause on the part of defendant (which constitutes malice);" and (4) actual damage and loss resulted.

*Id.* (quoting *Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen of City of McComb City*, 760 So. 2d 715, 719 (Miss. 2000)); *Springer v. Ausbern Const. Co.*, 231 So. 3d 1065, 1068 (Miss. Ct. App. 2016).

As with other claims asserted against Farmer, the Court's finding that the First Amended Complaint [14] fails to allege any personal involvement on her part in the decision to terminate Vaughn warrants the dismissal of this claim. Vaughn argues that "[a] jury may reasonably infer that [Farmer] had the ability to influence [Walker]." [79] at p. 19. As Mississippi law makes clear, there must be a causal connection between Farmer's alleged actions and Vaughn's resulted loss. The First Amended Complaint [14] is void of any facts from which the Court could reasonably infer that Farmer exerted influence over Walker or that she otherwise caused Vaughn to be

terminated. *See Iqbal,* 556 U.S. at 678, 129 S. Ct. 1937. The Court therefore rejects Vaughn's argument. This claim is dismissed as against Farmer.

*Conclusion*[25]

For the reasons set forth above, the County and Farmer's respective Motions for Judgment on the Pleadings, or Alternatively, for Summary Judgment [49, 52] are GRANTED in part and DENIED in part.

All of Vaughn's claims against Farmer, individually, are hereby DISMISSED. The Clerk of Court is hereby directed to terminate Farmer as an active defendant in this case. Vaughn's Section 1981 claim against all Defendants is DISMISSED.

Vaughn is hereby directed to show cause as to why her Title VII claim against Walker, in her individual capacity, should not be dismissed and is directed to file a response in this regard within 14 days from the date of this Order. Should Vaughn fail to do so, the Court will dismiss the claim as against Walker without further notice.

Vaughn may proceed on the following claims:

1. First Amendment retaliation based on her report to the State Auditor brought under Section 1983 against the County;

2. First Amendment retaliation based on her political activity brought under Section 1983 against the County and Walker;

3. Equal Protection (race discrimination) brought under Section 1983 against the County and Walker;

4. Title VII (race discrimination) against the County;

5. Wrongful discharge in violation of public policy (*McArn*) against the County;

---

[25] To the extent the Court has not specifically addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result.

6. Violation of Mississippi's Whistleblower Protection Act against the County and Walker; and

7. Tortious interference with employment against Walker.

The previously-imposed stay is hereby LIFTED. The Magistrate Judge will hold a status conference in due course.

SO ORDERED, this the 19th day of September, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE